DAVID S. KAHN (NEVADA BAR NO. 7038)
SHERI M. THOME (NEVADA BAR NO. 8627)
J. SCOTT BURRIS (NEVADA BAR NO. 10529)
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
300 South Fourth Street, 11th Floor
Las Vegas, NV  89101
Tel:    (702) 727-1400 / Fax: (702) 727-1401
david.kahn@wilsonelser.com
sheri.thome@wilsonelser.com
J.Scott.Burris@wilsonelser.com

– and –

Alejandro J. Fernandez (*Pro Hac Vice* Pending)
**FELDMAN GALE, P.A.**
400 N. Tampa St., Suite 2830
Tampa, Florida 33602
Telephone: 305-358-5001
afernandez@feldmangale.com
Michael Hogan (*Pro Hac Vice* Pending)
**FELDMAN GALE, P.A.**
1700 Market Street, Suite 3130
Philadelphia, PA 19103
Telephone: 267-414-1300
mhogan@feldmangale.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HAND & NAIL HARMONY, INC., and NAIL ALLIANCE, LLC, <br><br>    Plaintiffs <br><br> vs. <br><br> DOES 1-1000, inclusive, <br><br>    Defendants | CASE NO.: <br><br> **COMPLAINT** |

337622.1

Plaintiffs, HAND & NAIL HARMONY, INC. ("Harmony"), and NAIL ALLIANCE, LLC ("Nail Alliance"), by their attorneys David S. Kahn of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP and Alejandro J. Fernandez and Michael P. Hogan of FELDMAN GALE, P.A., allege the following for their Complaint against the DOE Defendants herein, which will be named upon being identified.

## I.
## JURISDICTION AND VENUE

1. The causes and separate counts in this Complaint arise under the Lanham Trademark Act, Title 15 U.S.C. § 1051 *et seq.*, and the America Invents Act, Title 35 U.S.C. § 101 *et seq.*

2. This Court has federal question jurisdiction over the subject matter of this action pursuant to under 28 U.S.C. §§ 1331 and 1338 (a) and (b).

3. Venue is proper in this Court pursuant 28 U.S.C. § 1391.

## II.
## INTRODUCTION

4. This case concerns the flagrant violation of the intellectual property rights of Harmony by Defendants' counterfeiting activities at trade shows, including Cosmoprof North America in Las Vegas, Nevada from July 22 to July 24, 2012. Specifically, Defendants, a group of foreign professional counterfeiters, will attend Cosmoprof and other trade shows around the United States to pass off counterfeits of Harmony's GELISH soak-off gel polishes, as they have done in the past including at other Cosmoprof trade shows in Las Vegas, Nevada. Defendants' counterfeit merchandise incorporates spurious GELISH trademarks and inherently distinctive trade dress, and as a result, is certain to deceive consumers and irreparably damage the goodwill associated with Plaintiffs and the GELISH brand. Defendants' counterfeit merchandise, in addition to infringing Plaintiffs' trademark and trade dress rights, also infringes Harmony's design patent rights and contract rights.

337622.1

## III.
## PLAINTIFF

5. Harmony is a corporation duly organized under the laws of California. Harmony manufactures, distributes and sells high-quality, soak-off gel polishes and other nail care applications in a wide variety of colors under the brand name GELISH ("GELISH goods"). Harmony, using qualified distributors, sells GELISH goods directly to boutiques and salons in this Judicial District and throughout the world.

6. Nail Alliance (together with Harmony, the "Plaintiffs") is a limited liability corporation duly organized under the laws of Delaware. Nail Alliance owns certain marks used in connection with the GELISH goods, including the GELISH marks, as defined below. Nail Alliance exclusively licenses such marks to Harmony.

7. The high quality of GELISH goods together with the distinctive GELISH marks and distinctive, proprietary bottle have made the GELISH goods a phenomenal commercial success. Harmony has sold millions of bottles of GELISH brand gel polish in the United States and throughout the world.

8. Unfortunately, Harmony's success in selling GELISH goods has attracted a large pack of unscrupulous counterfeiters to large trade shows, such as Cosmoprof and others. Such counterfeiters, anxious to capitalize on the high demand for GELISH goods, dupe consumers into purchasing an ever expanding number of spurious products of backstreet quality and unknown origin. Harmony now spends a staggering amount of its resources policing and enforcing its intellectual property rights to protect consumers and itself from the corrosive impact of such counterfeiters.

## IV.
## DEFENDANTS

9. As more fully detailed below, Defendants are opportunistic, sophisticated

337622.1

counterfeiters and itinerant vendors that sell Chinese-made or other rip-offs of the GELISH goods at trade shows around the world, including in this Judicial District. At trade shows in particular, Defendants advertise, offer for sale, distribute, and sell goods that are spurious, counterfeit, or colorable imitations of GELISH goods ("Counterfeit Merchandise").

10. Upon information and belief, Defendants, Various Doe Defendants will be present at Cosmoprof 2012 in and around the Mandalay Bay Convention Center in Las Vegas, Nevada, and subject to the jurisdiction of this Court, at least between July 22, 2012 and July 24, 2012. The identity of the Various Doe Defendants is not presently known and this Complaint will be amended to include the name or names of the individual(s) when identified, though such may not be possible until enforcement is commenced.

11. Defendants Does 1-1000 are business entities or individuals which, upon information and belief, reside and\or conduct business within this Judicial District, including on a temporary basis at Cosmoprof North America, held between July 22, 2012 and July 24, 2012, in this jurisdiction. Moreover, Does 1-1000 are, upon information and belief, directly engaging in the sale of counterfeit products as alleged herein as partners or suppliers to the other Doe Defendants. Plaintiffs are presently unaware of the true names of Does 1-1000. Plaintiffs will amend this Complaint upon discovery of the identities of such fictitious Defendants.

## V.
## COMMON FACTUAL ALLEGATIONS

### A. HARMONY'S GELISH BRAND SOAK-OFF GEL POLISH

12. GELISH goods are made in America and are known throughout the industry for their high quality, durability, ease-of-use, consistency and beauty.

13. The GELISH mark is protected by multiple federal trademark registrations, including United States Trademark Registration Numbers 4,096,115 (GELISH standard character mark) and 3,857,946 (GELISH design plus words) for use in nail care applications. True and correct copies of

337622.1

the GELISH marks certificates of registration are set forth at Exhibit 1 to this Complaint.

14. The GELISH marks are also protected under the common laws of Nevada.

15. The brand name of each color of the GELISH goods is also protected under the Lanham Act and the common laws of Nevada. These include distinctive names such as SILVER SAND, EMERALD DUST, GRAND JEWELS, HIGH VOLTAGE, and many others, as provided in Exhibit 2.

16. Collectively, the preceding federal and common law trademarks for GELISH and individual brand names for colors of GELISH goods are referred to herein as the "GELISH marks."

17. Nail Alliance owns the GELISH marks.

18. Pursuant to an exclusive license agreement with Nail Alliance, Harmony has the exclusive, worldwide right to use the GELISH marks. Harmony has at all times relevant to this Complaint been the exclusive licensee of all rights in the GELISH marks.

19. The GELISH marks are symbols of Harmony's quality, reputation and goodwill and have never been abandoned.

20. As a result of Harmony's efforts, members of the consuming public readily identify the GELISH goods as being high quality goods sponsored and approved by Harmony.

21. Accordingly, the GELISH marks have achieved secondary meaning as identifiers of high quality gel polishes and nail applications.

22. Additionally, Harmony has further distinguished its products with unforgettable, artistic and visually beautiful bottle designs and ornamentation ("GELISH bottle"). Harmony's GELISH bottle, has clean lines, distinctive scroll artwork on a white background and the dominant GELISH marks above a circular color window, as illustrated below in FIGURE 1.

337622.1



**FIGURE 1: GENUINE GELISH BRAND SOAK-OFF NAIL POLISH**

23. The GELISH bottle's distinctive appearance, taken as a whole, is unique and non-functional. Since its inception, Harmony has extensively and continuously promoted and used the GELISH bottle design in the United States and worldwide.

24. Through Harmony's extensive and continuous use, the GELISH bottle has become a famous and well-known indicator of the origin and quality of the GELISH goods.

25. Over a period of years, Harmony has invested substantial time, money and other resources widely promoting the GELISH goods in the United States and throughout the world.

26. GELISH goods are widely and legitimately promoted by Harmony on the Internet and in numerous industry publications and trade shows, as well as by authorized GELISH goods distributors. The GELISH marks, therefore, qualify as "famous" as that term is used in 15 U.S.C. § 1125 (c)(1).

337622.1

27.  Harmony and Nail Alliance carefully monitor and police the use of the GELISH marks.

28.  Harmony has given notice to Defendants pursuant to 15 U.S.C. §1111 by marking bottle of GELISH brand gel polish with the ® symbol to notify others that the GELISH mark is the subject of federal trademark registrations.

29.  The GELISH marks have never been assigned or licensed to any of Defendants in this matter.

30.  In addition, the GELISH bottle design is covered by United States Design Patent D 656,824 issued on April 3, 2012 (the '824 patent). A copy of the '824 patent is attached to this Complaint as Exhibit 3. The '824 patent is in force and is entitled to protection under federal and common law. Harmony owns all right, title, and interest to the '824 patent pursuant to an assignment agreement executed May 4, 2010 by Danny Haile, the sole inventor of the '824 patent.

31.  The patented design of the '824 patent is illustrated in Figure 2 below:



**FIGURE 2**

337622.1

## B. THE DEFENDANTS' COUNTERFEITING ACTIVITIES

32. Harmony has discovered that Defendants are promoting, distributing and selling Counterfeit Merchandise at trade shows in this Judicial District, as well as throughout the United States and the world.

33. Upon information and belief, Defendants have full knowledge of Harmony's exclusive rights in and to the GELISH marks, including its exclusive right to use the GELISH marks and the goodwill associated therewith.

34. The Counterfeit Merchandise commonly sold by counterfeiters such as Defendants is nearly identical in appearance in every material aspect to genuine GELISH goods. Specifically, Defendants are using the GELISH marks in the same stylized fashion, but for different quality goods.

35. Figures 3-4 below, illustrate a genuine GELISH product and, by comparison, the Counterfeit Merchandise.



**FIGURE 3: GENUINE GELISH PRODUCT**

337622.1



**FIGURE 4: EXAMPLES OF COUNTERFEIT MERCHANDISE**

36. Upon information and belief, the Defendants' Counterfeit Merchandise is of a quality substantially different than that of Harmony's genuine GELISH goods. Upon information and belief, Defendants are using the GELISH mark inferior quality goods. The health effects of such products are unknown to Plaintiffs.

37. Despite the nature of their Counterfeit Merchandise and the knowledge they are without authority to do so, Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Merchandise with the knowledge that it will be mistaken for the genuine high quality products offered for sale by Harmony.

38. The net effect of Defendants' actions is confusion of consumers who will believe the Defendants' Counterfeit Merchandise is genuine, originates from Harmony, and is approved by Harmony.

39. In addition, Defendants are willfully infringing Harmony's '824 patent.

337622.1

## C. THE COUNTERFEITING SUPPLY CHAIN

40. Upon information and belief, the Counterfeit Merchandise is manufactured by large-scale, professional facilities located in counterfeiter safe havens, such as the People's Republic of China.

41. One notorious counterfeiter is Guangzhou Cocome Cosmetics Limited ("CCO"), which is located in Guangzhou, China. CCO manufacturers, promotes, distributes and sells mass quantities of Counterfeit Merchandise in the United States and around the world.

42. Upon information and belief, CCO ships Counterfeit Merchandise in small to medium sized packages to make it difficult for U.S. Customs to identify and intercept the Counterfeit Merchandise at points of entry in the United States.

43. Using websites such as www.alibaba.com or www.alieexpress.com, CCO promotes, distributes and sells Counterfeit Merchandise to numerous distributors and anonymous middlemen, including distributors and middlemen located in the United States.

44. According to the CCO web page on http://cconailgel.en.alibaba.com/aboutus.html, CCO attends Cosmoprof trade shows around the world.

45. According to the CCO web page on http://cconailgel.en.alibaba.com/aboutus.html, North America is among its main markets.

46. Upon information and belief, CCO, using distributors and anonymous middlemen, sells Counterfeit Merchandise at trade shows within the United States.

47. While not named as a Defendant herein, it is anticipated that CCO may be among the counterfeiters that will attend Cosmoprof in Las Vegas.

48. Another notorious counterfeiter is Guangzhou Blue Sky Chemical Technology Company, Limited ("GBS"), which is also located in Guangzhou, China. GBS manufacturers, promotes, distributes and sells mass quantities of Counterfeit Merchandise around the world.

337622.1

49. Using websites such as www.alibaba.com or www.alieexpress.com, GBS promotes, distributes and sells Counterfeit Merchandise to numerous distributors and anonymous middlemen, including distributors and middlemen located in the United States.

50. Upon information and belief, GBS ships Counterfeit Merchandise in small to medium sized packages to make it difficult for U.S. Customs to identify and intercept the Counterfeit Merchandise at points of entry in the United States.

51. Upon information and belief, GBS, using distributors and vendors, sells Counterfeit Merchandise at trade shows within the United States.

52. Counterfeit Merchandise is then sold at trade shows directly by the manufacturers or, in some cases, by anonymous middlemen and vendors that purchase the Counterfeit Merchandise through questionable Internet marketplaces, such as www.alibaba.com or www.alieexpress.com.

53. According to the GBS web page at http://nailgel.en.alibaba.com, North America is among GBS's main markets.

54. While not named as a Defendant herein, it is anticipated that GBS may be among the counterfeiters that will attend Cosmoprof in Las Vegas.

55. Upon information and belief, representatives or distributors of GBS or CCO frequently attend Cosmoprof shows using different corporate names to conceal their true identity.

56. Upon information and belief, Defendants have promoted and sold Counterfeit Merchandise at numerous Cosmoprof trade shows as recently as this year in Italy, and going back to at least Cosmoprof North America 2010, which was also held in Las Vegas.

57. The only effective way to combat this problem is to seize the Counterfeit Merchandise at the point of sale.

58. Defendants at trade shows are aware of the illegality of their conduct, and often act in concert with or through anonymous distributors.

337622.1

59. Defendants lack a definite or permanent business identity and cannot be located or served with process in conventional fashion. This makes notice to the manufacturers and vendors impractical and fruitless.

60. Upon information and belief, at trade shows, once word spreads that legal action may be taken against infringers, the Counterfeit Merchandise will be concealed and transferred to different channels of distribution. Moreover, given the high likelihood that the evidence will be concealed and transferred, it is practically impossible for Plaintiffs to obtain evidence to secure any meaningful relief. Therefore, unless restrained and enjoined by this Court without notice, Defendants will persist in their illicit activities, causing Plaintiffs further irreparable harm before any Defendant can be heard in opposition.

61. Plaintiffs believe that the trade show or convention hosting authority will support the attempts of Plaintiffs to eliminate infringement during their event.

62. Since the acts of Defendants will continue in the future unless restrained, Plaintiffs have no adequate remedy at law.

## COUNT ONE
## TRADEMARK INFRINGEMENT AND COUNTERFEITING IN VIOLATION OF
## 15 U.S.C. §§ 1114, 1116(d)

63. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

64. On information and belief, notwithstanding Plaintiffs' well-known and prior rights in the GELISH mark and the GELISH goods, Defendants manufacture, distribute, offer for sale and/or sell Counterfeit Merchandise to the consuming public in direct competition with the sale of genuine GELISH goods., in or affecting interstate commerce.

65. Defendants knowingly and without the consent of Plaintiffs have used in commerce reproductions, counterfeit copies, and colorable imitations of multiple registered marks of Plaintiffs in connection with the sale, offering for sale, distribution, and/or advertising of goods on or in

337622.1

connection with which such use is likely to cause confusion, cause mistake, or to deceive.

66. Without prejudice to the generality of the foregoing, Defendants' violations consist of or include the use of counterfeit marks in connection with the sale, offering for sale, and/or distribution of goods.

67. Defendants' previously described activities constitute counterfeiting and intentional, willful infringement, in violation of Plaintiffs' rights under 15 U.S.C. §1114, and have caused and will continue to cause Plaintiffs irreparable harm.

68. Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and (d) and the equitable powers of this Court, Defendants will persist in their activities, thereby causing Plaintiffs additional irreparable harm.

## COUNT TWO
## FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTIONS, UNFAIR COMPETITION AND DILUTION UNDER
## 15 U.S.C. § 1125

69. Plaintiffs repeat and reallege the allegations in paragraphs 1-62 above as if fully set forth herein.

70. The Counterfeit Merchandise sold by Defendants is of the same general nature and type as the GELISH goods sold and exclusively licensed to be sold by Harmony. The Counterfeit Merchandise is so related to and indistinguishable from the GELISH goods that Defendants' activities are likely to, and certainly intended to, cause confusion of the general purchasing public.

71. By misappropriating and using the GELISH marks, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Merchandise and create a likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of the Counterfeit Merchandise.

72. Moreover, the Counterfeit Merchandise is often of inferior quality and the sale

337622.1

thereof will damage and will dilute the goodwill of Plaintiffs and the GELISH mark, as well as the reputation Harmony and Nail Alliance have developed in connection with the sale of genuine GELISH goods.

73. Defendants' unlawful, unauthorized and unlicensed manufacture, offer for sale, and sale of Counterfeit Merchandise creates the express and implied misrepresentation that the Counterfeit Merchandise was created, authorized or approved by Plaintiffs.

74. Defendants' activities described above violate 15 U.S.C. § 1125(a) in that Defendants' use in commerce of the GELISH marks and the GELISH bottle create a false designation of origin. Defendants' use, manufacture, promotion, offers to sell, selling, and importing into the United States Counterfeit Merchandise that is confusingly similar to the GELISH marks and the GELISH bottle, infringes Plaintifffs' exclusive trade dress rights in violation of the common law.

75. Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiffs' trade dress, business, reputation, and goodwill. Plaintiffs' have no adequate remedy at law because monetary damages are inadequate to compensate Plaintiffs for the injuries caused by Defendants.

76. On information and belief, Defendants' use of colorable imitations of the GELISH bottle has been intentional and willful. Defendants' bad faith is evidenced at least by the striking similarity of the Counterfeit Merchandise to the GELISH bottle.

77. Plaintiffs' are entitled to injunctive relief, and Plaintiffs are also entitled to recover Defendants' profits, actual damages, punitive damages, costs, and reasonable attorney fees.

78. Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE
## UNFAIR COMPETITION BY INFRINGEMENT OF COMMON LAW RIGHTS

79. Plaintiffs repeat and reallege the allegations in paragraphs 1-62 above as if fully set

337622.1

forth herein.

80. Defendants' unauthorized and unlawful activities described herein have been and will be committed willfully and with full knowledge of the rights of Plaintiffs and with the intention of deceiving and misleading the public and of wrongfully misappropriating and trading upon the nationally recognized value of the goodwill and reputation associated with the GELISH marks and the GELISH bottle, and of benefiting from and depriving Plaintiffs of the benefits arising from the reputation and goodwill associated with Plaintiffs and their sale of the GELISH goods.

## COUNT FOUR
## PATENT INFRINGEMENT

81. Plaintiffs re-allege each and every allegation set forth in paragraphs 1 through 62 above, inclusive, and incorporate them by reference herein.

82. Defendants have made, used, offered to sell, sold, and/or imported into the United States, and still are making, using, offering to sell, selling, and/or importing into the United States, nail polishes in bottles having designs that infringe the '824 patent owned by Harmony without Harmony's authorization.

83. Upon information and belief, Defendants have been and continue to actively induce others to infringe the '824 patent.

84. Defendants' infringements have been intentional and willful, making this an exceptional case.

85. Harmony has been and will continue to be irreparably harmed by Defendants' infringements of the '824 patent entirely owned by Harmony.

## COUNT FIVE
## INTERFERENCE WITH CONTRACTUAL RELATIONS

86. Plaintiffs repeat and reallege the allegations in paragraphs 1-62 as if fully set forth herein.

337622.1

87. The unauthorized and unlawful activities of Defendants described herein wrongfully impair the value of the contract referred to in paragraph 5 above, as well as the arrangements between Harmony and its distributors located in Nevada relating to the distribution of the GELISH goods.

## **PRAYER FOR RELIEF**

88. WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and entry of an award of equitable relief against Defendants as follows:

A. That Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other Judicial Districts of the United States, preliminarily, during the course of this litigation and permanently from: (i) manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products, merchandise or goods bearing the trademarks, logos and other indicia of the GELISH goods or any colorable variation or imitation thereof, or any goods comprising the ornamental designs claimed in the '824 patent; and (ii) representing that any products, merchandise or goods manufactured, distributed, sold, held for sale or advertised by them is sponsored or authorized by Harmony and/or Nail Alliance in this district or any other district in which Plaintiffs seek to enforce this Court's Injunction Order.

B. That the United States Marshal, Christopher Hoye, the local and state police or sheriff, off duty officers of the same, authorized agents of Plaintiffs, and/or any persons acting under their supervision to seize and impound any and all Counterfeit Merchandise that Defendants attempt to advertise, promote, sell, distribute or hold for sale at, within or in the vicinity of the Cosmoprof North America 2012 at the Mandalay Bay Convention Center in Las Vegas, Nevada, and other trade shows, whether this occurs before, during

337622.1

or after Cosmoprof North America 2012.

C. That Defendants, pursuant to 15 U.S.C. § 1118, deliver up for destruction any and all Counterfeit Merchandise, together with all Counterfeit Merchandise in the process of manufacture or deliver, all labels, packages, wrappings, receptacles and advertising collateral, the use of which would violate the injunction granted in paragraph 88.A above within seven (7) days of the date of entry of any judgment finding a violation by Defendants of Plaintiffs' rights in the GELISH mark and/or the GELISH goods.

D. The Defendants be required to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark infringing and counterfeiting activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election with respect to Count I, that Plaintiffs be awarded statutory damages from each Defendants in the amount of one million dollars ($1,000,000.00) per each counterfeit GELISH mark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

E. That Defendants pay to Plaintiffs damages in an amount to be determined.

F. That Defendants pay to Plaintiffs punitive damages.

G. That Defendants pay to Plaintiffs pre-judgment interest on its respective judgment.

H. That Defendants pay to Plaintiffs their costs, reasonable attorney's fees, and investigative fees.

///

///

///

///

///

337622.1

I. That Defendants pay to Plaintiffs such other and further relief as this Court deems just and proper.

DATED this 9th day of July, 2012

                                WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                                By:/s/David S. Kahn
                                   David S. Kahn (Nevada Bar No. 7038)
                                   Sheri M. Thome (Nevada Bar No. 8627)
                                   J. Scott Burris (Nevada Bar No. 10529)
                                   300 South Fourth Street, 11th Floor
                                   Las Vegas, NV  89101

337622.1

**DEMAND FOR JURY TRIAL**

Plaintiffs HAND & NAIL HARMONY, INC. and NAIL ALLIANCE, LLC demand trial by jury.

DATED this 9th day of July, 2012

                                        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: /s/David S. Kahn
    David S. Kahn (Nevada Bar No. 7038)
    Sheri M. Thome (Nevada Bar No. 8627)
    J. Scott Burris (Nevada Bar No. 10529)
    300 South Fourth Street, 11th Floor
    Las Vegas, NV  89101

337622.1