DAVID S. KAHN (NEVADA BAR NO. 7038)
SHERI M. THOME (NEVADA BAR NO. 8627)
J. SCOTT BURRIS (NEVADA BAR NO. 10529)
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
300 South Fourth Street, 11th Floor
Las Vegas, NV  89101
Tel:     (702) 727-1400 / Fax: (702) 727-1401
david.kahn@wilsonelser.com
sheri.thome@wilsonelser.com
J.Scott.Burris@wilsonelser.com

– and –

Alejandro J. Fernandez (*Pro Hac Vice* Pending)
**FELDMAN GALE, P.A.**
400 N. Tampa St., Suite 2830
Tampa, Florida 33602
Telephone: 305-358-5001
afernandez@feldmangale.com
Michael Hogan (*Pro Hac Vice* Pending)
**FELDMAN GALE, P.A.**
1700 Market Street, Suite 3130
Philadelphia, PA 19103
Telephone: 267-414-1300
mhogan@feldmangale.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HAND & NAIL HARMONY, INC., and NAIL ALLIANCE, LLC, | CASE NO.:  2:12-cv-01212 |
| Plaintiffs | |
| vs. | **ORDER GRANTING PLAINTIFFS' EMERGENCY EX PARTE MOTION** |
| DOES 1-1000, inclusive, | |
| Defendants | |

THIS CAUSE is before the Court on the Emergency *Ex Parte* Application by Plaintiffs Hand

337624.2

& Nail Harmony, Inc. a California corporation ("Harmony") and Nail Alliance, LLC, a Delaware limited liability corporation ("Nail Alliance", collectively "Plaintiffs") for:

(A) Temporary Restraining Order and Seizure Order;

(B) Order to Show Cause Why a Preliminary Injunction Should Not Issue;

(C) Substitute Custodian Order;

(D) Expedited Discovery Order; and

(E) an Order Temporarily Sealing the Court File

against Various John Does 1-1000 (collectively "Defendants"), for alleged violations of the Lanham Act, 15 U.S.C. § 1114, 1116(d).

For the reasons set forth herein, Plaintiffs' Emergency *Ex Parte* Application is GRANTED.

## I.  FACTUAL BACKGROUND

The Court bases this Order on the following facts from Plaintiffs' Complaint, Application, and supporting evidentiary submissions.

Harmony promotes, distributes and sells an enormously successful line of patent-pending, soak-off gel polishes under the brand name GELISH ("GELISH goods").   GELISH goods are made in America and are of exceedingly high quality, durability, consistency and beauty.  (Affidavit of Danny Haile ("Haile Affidavit") ¶ 11 ). They are sold in an elegantly adorned, distinctive bottle as illustrated in Figure 1 below. (Haile Affidavit ¶ 12)



Page 2 of 13

337624.2

**FIGURE 1: GENUINE GELISH BRAND SOAK-OFF NAIL POLISH**

Harmony invests millions of dollars in promoting its GELISH goods in the United States and throughout the world.  (Haile Affidavit ¶ 18)  For example, Harmony invests millions of dollars promoting GELISH goods at trade shows around the world, as well as in an expansive number of print and online trade publications.  (Haile Affidavit ¶ 18)  Online, Harmony developed a highly visited website (www.nailharmony.com) and corporate pages on social media sites, such as Facebook.  Harmony has even produced popular online advertisements, including one video that has been viewed more than 2.5 *million* visitors.  (Haile Affidavit ¶ 19)

Nail Alliance is a holding company that owns the rights to United States Trademark Registration Numbers 4,096,115 (GELISH standard character mark) and 3,857,946 (GELISH design plus words), together with all other common law trademark and trade dress rights associated with the GELISH goods (collectively, "GELISH marks").  (Haile Affidavit ¶ 5, Exhibit 2)  Harmony is the exclusive, worldwide licensee of Nail Alliance as relates to the GELISH goods and the GELISH marks.  (Haile Affidavit ¶ 6)

The GELISH standard character mark and GELISH design plus words marks are valid and registered in class 3 for use in connection with nail care preparations.  Each of the GELISH goods incorporates the ® symbol to notify others that the mark GELISH is the subject of federal trademark registrations.

The GELISH marks are symbols of Harmony's quality, reputation and goodwill and have never been abandoned.  Moreover, the GELISH marks are instantly recognizable and associated exclusively with Harmony throughout the world by consumers.  Accordingly, the GELISH marks are famous marks as the term is defined in the Lanham Act, 15 U.S.C. § 1125 (c).

Unfortunately, the commercial success of Harmony's GELISH goods has attracted numerous counterfeiters that are bent on syphoning Harmony's profits at the expense of Harmony and unwary

337624.2

consumers.   Defendants flagrantly promote and sell deeply-discounted, spurious, counterfeit or colorable imitations of GELISH goods ("Counterfeit Merchandise") to boutiques and end users in attendance at trade shows.  (Haile Affidavit ¶ 21)  As early as Cosmoprof North America 2010 in Las Vegas, and as recently as Cosmoprof Italy in March 2012, Defendants have attended Cosmoprof trade shows to sell Counterfeit Merchandise.  (Haile Affidavit ¶ 21)  As the demand for GELISH goods has increased, so too it appears, has the presence of Defendants at Cosmoprof and other trade shows.  (Haile Affidavit ¶ 25)

Cosmoprof North America, held in Las Vegas, Nevada between July 22 and July 24, 2012, will be an irresistible venue for Defendants' counterfeiting activities.  Cosmoprof North America is *the* premier trade show in the United States beauty industry.  Last year, Cosmoprof was attended by more than 25,000 visitors from 105 countries. (Exhibit 3)  Given the size of this show, and the increasing popularity of trade shows as a place for Defendants to sell Counterfeit Merchandise, there is a very high likelihood that Defendants will be present and aggressively promoting and selling Counterfeit Merchandise at Cosmoprof  North America 2012.

Defendants' Counterfeit Merchandise is presented in bottles nearly identical in every material aspect to genuine GELISH goods.  (Haile Affidavit ¶ 23)  As illustrated below, Defendants have the temerity to copy the "patent pending" notice below the color window.  Figures 2 below, illustrates an example of Counterfeit Merchandise manufactured in China and unlawfully imported into the United States and this judicial district.

337624.2



**FIGURE 2: EXAMPLES OF COUNTERFEIT MERCHANDISE**

Given the similarity between the Counterfeit Merchandise bottles and genuine GELISH goods, it is an undeniable reality that consumers presented with the Counterfeit Merchandise will be confused regarding its source.

The purported soak-off gel polish sold in the Counterfeit Merchandise is of inferior quality. (Haile Affidavit ¶ 24)  The Counterfeit Merchandise is commonly manufactured by large-scale, professional manufacturing shops located in counterfeiting safe havens, such as the People's Republic of China.  (Exhibit 4)   Such facilities are well-known for using the cheapest quality, and sometimes hazardous, ingredients of questionable origin.  Defendants generally sell Counterfeit Merchandise at a per-unit price range between approximately $2 and $20, depending on the volume of units purchased.

## II.   CONCLUSIONS OF LAW

The Declarations and accompanying Exhibits submitted in support of its Application amply support the following conclusions of law:

A.      Plaintiffs have a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of nail

337624.2

care preparations bearing counterfeits, reproductions, and/or colorable imitations of the GELISH marks, in that they have shown they are the owners of valid trademarks and that products Defendants are selling and offering for sale are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks on nail care preparations;

B.      Because of the infringement of the GELISH marks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted.  It clearly appears from the following specific facts, as set forth in Plaintiffs' Complaint, Motion, and accompanying declarations, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

1.      Defendants appear to be operating a  wholesale distribution business which is manufacturing, offering for sale and selling nail care preparations bearing counterfeit and infringing trademarks in violation of Plaintiffs' respective rights;

2.      Plaintiffs have well-founded fears that more counterfeit and infringing products bearing its trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products, resulting in consequent injury to Plaintiffs' reputation and goodwill; and that Plaintiffs may suffer loss of sales for their genuine products;

3.      Plaintiffs have well-founded fears that if they proceed on notice to the Defendants on this Application, Defendants will secret, conceal, destroy, sell off, or otherwise dispose of their counterfeit and infringing goods, the computers and infringing goods, and the business records relating thereto and/or inform their suppliers and others of Plaintiffs' claims with the result that those suppliers and others may also secret, conceal, sell off, or otherwise dispose of counterfeit or infringing goods and records relating thereto in their possession and control;

337624.2

C.     The balance of potential harm to the Defendants in restraining their trading in counterfeit goods if a temporary restraining order, seizure order, order and substitute custodian order are issued is far outweighed by the potential harm to Plaintiffs, their reputation and goodwill as a manufacturer of high quality products if such relief is not issued;

D.     The public interest favors issuance of the temporary restraining order and seizure order in order to protect Plaintiffs' trademark interests and the public from being defrauded by the palming off of counterfeit goods as the Plaintiffs' genuine goods; and

E.     An order other than an *Ex Parte* Seizure Order is not adequate to achieve the purposes of 15 U.S.C. § 1114.

Upon review of Plaintiffs' Complaint, Motion, and supporting evidentiary submissions, it is hereby

ORDERED the Plaintiffs' Emergency Ex Parte Application is GRANTED, according to the terms set forth below:

## TEMPORARY RESTRAINING ORDER

(1)     Defendants, their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants are hereby temporarily restrained:

(a) From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the GELISH marks identified in Section I or the trade dress associated with the GELISH goods, above, or any confusingly similar mark, other than those actually manufactured or distributed by Plaintiffs;

(b) From communicating, directly or indirectly, with any person or persons (i) from whom Defendants purchased or obtained products bearing any of the GELISH marks identified in Section I above; (ii) to whom Defendants sold or offered to sell these products; or (iii) whom Defendants knows or reasonably believes to possess, control, or have access to any these products;

(c) From otherwise communicating, directly or indirectly, with any person(s) about this action, or Plaintiffs' Motion for this Order, except for Defendants' attorney or

Page 7 of 13

337624.2

attorneys;

(d) From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing any of the GELISH marks, or any confusingly similar marks, or trade dress; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing any of the GELISH Marks, or any confusingly similar marks;

(e) Knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (a) through (d) above.

(2)     This Temporary Restraining Order shall expire 10 days after its issuance unless Plaintiffs show good cause as to why it should be extended or Defendants consent to its extension;

## SEIZURE ORDER

(3)     Pursuant to 15 U.S.C. § 1116(d)(9), the United States Marshals or other Federal or law enforcement officials (such as officers or agents of the United States Customs Service, Secret Service, Federal Bureau of Investigation, or Post Office) or State or local law enforcement officers, together with Plaintiffs' representatives, are hereby authorized to use the reasonable force necessary to carry out the seizure as provided herein and Defendants shall surrender for seizure:

(a) all counterfeit products bearing any of the GELISH marks, or any other marks substantially indistinguishable from the GELISH marks; and

(b) all documents, things, and records of any kind relating to the importation, purchase, acquisition, manufacture, insurance of, advertising, promotion, sale, offering for sale, distribution, and transfer of such products, including, but not limited to, computer disks, CD ROMs, computer hardware, and other magnetically or electronically stored information, as provided by 15 U.S.C. § 1116(d)(i)(A).

The United States Marshals or other Federal, State, or local law enforcement officers executing this Order may look for the documents and things to be seized and may appoint any other persons, including Plaintiffs' counsel, investigators and other representatives, to assist in the identification of goods, manufacturing equipment, and relevant records and the execution of this Seizure Order;

(4)     Plaintiff, through its counsel, investigators and other representatives, are authorized

Page 8 of 13

337624.2

Case 2:12-cv-01212-JCM-PAL   Document 9   Filed 07/19/12   Page 9 of 13

under the supervision and with the assistance of the United States Marshals or other Federal, State, or local law enforcement officers, to take all necessary steps to secure and remove all property and documents identified in Paragraph (3) above which are located at the following address:

>Cosmoprof North America 2012 Trade Show
>Mandalay Bay Hotel Convention Center

Should Plaintiffs learn of any other warehouse, storage facility, or office where Defendants are manufacturing, warehousing, holding or storing counterfeit nail care preparations bearing any of the GELISH marks or any confusingly similar marks, Plaintiffs shall notify the Court prior to seizing any goods therein;

(5)     Plaintiffs and/or their designees may videotape and take photographs and notes of the seizure.  However, such videotape and photographs are not to be published to anyone other that the Court, Defendants and their legal representatives, and Plaintiffs and their agents and legal representatives without further order of the Court;

(6)     Only the property listed in this Order shall be seized and impounded, and due care shall be taken by the United States Marshals or other law enforcement officers, their appointed assistants, and Plaintiffs' representatives to preserve and keep in good order Defendants' property and assets which are not related to the manufacture, packaging, importation, sale, or distribution of the alleged counterfeit products referred to above;

(7)     Anyone interfering with the execution of this Order is subject to arrest by the United States Marshals or other Federal, State, or local law enforcement officers executing this Seizure Order;

(8)     The seizure shall take place on or about July 22-July 24, 2012 at Cosmoprof North America 2012, but not later than seven (7) days after the issuance of this Order occurring in the United States pursuant to 15 U.S.C. § 1116(d)(5)(C).

(9)     Per 15 U.S.C. § 1116(d)(10), a hearing shall take place not sooner than ten (10) days

Page 9 of 13

337624.2

after the order is issued and not later than fifteen (15) days after the order is issued, namely, on

August 3, 2012 _____, at 1:30 pm _____ unless Plaintiffs show good cause for another date, or unless

Defendants consent to another date.  The hearing shall address (1) execution of the seizure of the

allegedly counterfeit goods from Defendants; (2) Plaintiffs' requested entry of a preliminary

injunction; (3) Plaintiffs' request to expedite discovery; and (4) the amount of the bond Plaintiffs

should be required to post;

(10)    If after the seizure of goods outlined above takes place, Defendants obtain additional

counterfeit goods as described above, whether by manufacturing, importation, delivery, or otherwise,

Defendants shall immediately notify the Court and deliver same into the custody of Plaintiff's

counsel or to the United States Marshal to deliver to Plaintiff's counsel.

**BOND TO BE POSTED**

(11)    Prior to the execution of the Seizure Order above, per 15 U.S.C. § 1116(d)(5)(D),

Plaintiffs shall post a bond in the amount of five thousand dollars ($5,000.00), as payment of

damages to which Defendants may be entitled for a wrongful attempted seizure, and shall file proof

of the bond.  Any issue as to the adequacy of the bond must be raised at the hearing on

August 3, 2012 _____.

**SUBSTITUTE CUSTODIAN ORDER**

(12)    Plaintiffs, through their counsel, investigators and/or representatives, will account

completely for all property seized pursuant to this Order and shall compile a written inventory of all

such property and shall provide a copy to the United States Marshal, who shall include a copy with

his Return to the Court;

(13)    Plaintiffs' counsel, Feldman Gale, P.A. and Wilson, Elser, Moskowitz, Edelman &

Dicker, LLP will act as substitute custodians of any and all property seized pursuant to this Order

and shall hold harmless the United States Marshals Service or other Federal, State, or local law

337624.2

enforcement officers executing this Seizure Order and their employees from any and all claims asserted in any court or tribunal arising from any acts, incidents, or occurrences in connection with the seizure and possession of any of the Defendants' property, including any third-party claims.  Any and all products seized pursuant to this Order shall be maintained at a secured storage facility. Defendants' counsel shall have supervised access to the stored goods and the seized business records.

## COMPLIANCE REPORT

(14)    Defendants shall file with the Court and serve on counsel for Plaintiffs within five (5) days after the service of this Order, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with this Order.  Specifically, the report shall include a Certification that:

(a) The Defendants have identified and surrendered to law enforcement officials and the Substitute Custodian all documents and property subject to seizure pursuant to Paragraphs II.(3)(a) through (c) above;

(b) The Defendants have not discussed the Plaintiffs' Application, this Seizure Order or any aspects of the above-captioned case with any persons or entities other then those identified in Paragraphs II. (1)(b) and (c) above;

(c) Defendants have not knowingly instructed, aided or abetted any other person or business entity engaging in any of the activities referred to in sub paragraphs II. (1)(a) through (d) above.

## ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND ORDER OF NOTICE

(15)    Upon the Complaint herein and Motion for Order to Show Cause Why a Preliminary Injunction Should Not Issue, Defendants are hereby ORDERED to show cause before this Court in the United States Courthouse located at 333 Las Vegas Blvd. Courtroom 6A   Las Vegas, Nevada on August 3, 2012 at 1:30 pm   or at such other time that this Court deems appropriate, why an order should not issue pursuant to FED. R. CIV. P. 65(a), granting the injunctive relief in Plaintiffs' Application for Order to Show Cause Why a Preliminary Injunction Should Not Issue;

(16)    Service or delivery of copies of this Order and the papers in support thereof on

337624.2

Defendants or their attorneys at the time of the seizure or within two (2) days after the seizure if there is no party present at the seizure that is authorized to accept service, shall be given and as so given shall be deemed good and sufficient service thereof.   All seized business records shall be copied and returned to the Defendants or their counsel within three (3) business days from the date of the seizure ordered herein.

(17)     Opposing papers, if any, shall be filed with the Court and served by hand on Plaintiffs' counsel, forty-eight (48) hour prior to the hearing set for ___August 3_____, 2012. Plaintiffs shall file any Reply Memorandum on or before 12 noon August 2, 2012  The above dates may be revised upon stipulation by all parties to a continuance or upon agreement to maintain the status quo.

(18)     Defendants are hereby on notice that failure to appear at the show cause hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C.§ 1116(d) and FED. R. CIV. P. 65.

**EXPEDITED DISCOVERY**

(19)     Plaintiffs are authorized to immediately propound requests for production of documents and interrogatories, and the Defendants are hereby required to serve their responses within three (3) days of service of the Plaintiffs' request.   Plaintiffs are authorized to take depositions immediately of the Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

337624.2

1

**SEAL ORDER**

2      (20)    Pursuant to 15 U.S.C. § 1116(d)(8), this Order, together with the supporting

3  documents, shall be sealed until Defendants have had an opportunity to contest this Order, except

4  that Defendants shall have access to this Order and supporting documents after the seizure has been

5  carried out.

6          DONE AND ORDERED in Las Vegas, Nevada, this 19th day of July, 2012, at 9:00 am.

7

8

9                                   UNITED STATES DISTRICT JUDGE

10

11  Submitted by:

12  WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

13

14  By:/s/David S. Kahn
    David S. Kahn (Nevada Bar No. 7038)

15  Sheri M. Thome (Nevada Bar No. 8627)
    J. Scott Burris (Nevada Bar No. 10529)

16  300 South Fourth Street, 11th Floor
    Las Vegas, NV  89101

17

18

19

20

21

22

23

24

25

26

27

28

337624.2