UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HAND & NAIL HARMONY, INC., and NAIL ALLIANCE, LLC, <br><br>  Plaintiffs <br><br> vs. <br><br> GUANGZHOU SHUN YAN COSMETICS CO., LTD., DBA SHUN YAN COSMETICS, CO., LTD., CHUJIE PLASTIC CO., LTD. DBA YIWU HAIKANG COSMETIC BUSINESS <br><br> DOES 3-1000, inclusive, <br><br>  Defendants | 2:12-cv-01212-JCM -PAL |

## ORDER FOR PRELIMINARY INJUNCTION

THIS CAUSE is before the Court on the Emergency Application by Plaintiffs Hand & Nail Harmony, Inc. a California corporation ("Harmony") and Nail Alliance, LLC, a Delaware limited liability corporation ("Nail Alliance", collectively "Plaintiffs") (ECF/Docket Entry # 2) for Temporary Restraining Order and Seizure Order; Order to Show Cause Why A Preliminary Injunction Should Not Issue; Substitute Custodian Order; Expedited Discovery; and Order

424509.6

Temporarily Sealing The Court File ("Application for Preliminary Injunction"), and upon the Preliminary Injunction Hearing held on August 3, 2012.  The Court has carefully reviewed the Application for Preliminary Injunction, the entire court file and is otherwise fully advised in the premises.

The Court convened the hearing on August 3, 2012, at which only counsel for Plaintiffs was present and presented evidence supporting the Application for Preliminary Injunction.  The Defendants have not responded to the Application for Preliminary Injunction, nor made any filing in this case, nor have the Defendants appeared in this matter either individually or through counsel.  Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, Plaintiffs' Application for Preliminary Injunction is GRANTED.

## I.  FACTUAL BACKGROUND

The Court bases this Order on the following facts from Plaintiffs' Complaint, Plaintiff's Amended Complaint, Plaintiff's Application, all supporting evidentiary submissions, and all information received by the Court at the time of the hearing on this matter, including a Court view of all physical materials seized during the Cosmoprof 2012 trade show in Las Vegas.

Harmony promotes, distributes and sells an enormously successful line of patent-pending, soak-off gel polishes and other nail care applications in a wide variety of colors under the brand name GELISH.  Additionally, Harmony manufactures, distributes and sells high-quality UV lamps under its marks GELISH LED 6G, GELISH LED 9G, and GELISH LED 18G, all of which are used to rapidly cure its GELISH brand polishes and nail care applications, and which bear similar trade dress to the GELISH brand gel polishes and nail care applications.  Collectively, Harmony's GELISH brand gel polishes, nail care applications, and UV lamps are referred to herein as the "GELISH goods."  (Amended Complaint ¶5)GELISH goods are made in America and are of exceedingly high quality, durability, consistency and beauty.  (Affidavit of Danny Haile ("Haile

424509.6

Affidavit") ¶ 11, Exhibit 1 to ECF/Docket Entry # 2). They are sold in an elegantly adorned, distinctive bottle as illustrated in Figure 1 below. (Haile Affidavit ¶ 12, Exhibit 1 to ECF/Docket Entry # 2)  The GELISH LED 18G lamp is sold in an elegantly adorned, distinctive enclosure as illustrated in Figure 2 below.  (Amended Complaint ¶¶27-28)



**FIGURE 1: GENUINE GELISH BRAND SOAK-OFF NAIL POLISH AND TOP-It OFF**



**FIGURE 2: GELISH LED 18G LAMP**

Harmony invests millions of dollars in promoting its GELISH goods in the United States and throughout the world.  (Haile Affidavit ¶ 18, Exhibit 1 to ECF/Docket Entry # 2)  For example, Harmony invests millions of dollars promoting GELISH goods at trade shows around the world, as

424509.6

well as in an expansive number of print and online trade publications.  (Haile Affidavit ¶ 18, Exhibit 1 to ECF/Docket Entry # 2)    Online, Harmony developed a highly visited website (www.nailharmony.com) and corporate pages on social media sites, such as Facebook.  Harmony has even produced popular online advertisements, including one video that has been viewed by more than 2.5 *million* visitors.  (Haile Affidavit ¶ 19, Exhibit 1 to ECF/Docket Entry # 2)

Nail Alliance is a holding company that owns the rights to United States Trademark Registration Numbers 4,096,115 (GELISH standard character mark) and 3,857,946 (GELISH design plus words), together with all other common law trademark and trade dress rights associated with the GELISH goods (collectively, "GELISH marks").  (Haile Affidavit ¶ 5, Exhibit 2, Exhibit 1 to ECF/Docket Entry # 2)  Harmony is the exclusive, worldwide licensee of Nail Alliance as relates to the GELISH goods and the GELISH marks.  (Haile Affidavit ¶ 6, Exhibit 1 to ECF/Docket Entry # 2)

The GELISH standard character mark and GELISH design plus words marks are valid and registered in class 3 for use in connection with nail care preparations.  Each of the GELISH goods incorporates the ® symbol to notify others that the mark GELISH is the subject of federal trademark registrations.

The GELISH marks are symbols of Harmony's quality, reputation and goodwill and have never been abandoned.  Moreover, the GELISH marks are instantly recognizable and associated exclusively with Harmony throughout the world by consumers.  Accordingly, the GELISH marks are famous marks as the term is defined in the Lanham Act, 15 U.S.C. § 1125 (c).

Unfortunately, the commercial success of Harmony's GELISH goods has attracted numerous counterfeiters that are bent on syphoning Harmony's profits at the expense of Harmony and unwary consumers.  Defendants flagrantly promote and sell deeply-discounted, spurious, counterfeit or colorable imitations of GELISH goods ("Counterfeit Merchandise") to boutiques and end users in

424509.6

attendance at trade shows. (Haile Affidavit ¶ 21, Exhibit 1 to ECF/Docket Entry # 2) Defendants have attended Cosmoprof trade shows to sell Counterfeit Merchandise prior to this calendar year. (Haile Affidavit ¶ 21, Exhibit 1 to ECF/Docket Entry # 2) As the demand for GELISH goods has increased, so too it appears, has the presence of Defendants at Cosmoprof and other trade shows. (Haile Affidavit ¶ 25, Exhibit 1 to ECF/Docket Entry # 2)

Cosmoprof North America, held in Las Vegas, Nevada between July 22 and July 24, 2012, was an irresistible venue for Defendants' counterfeiting activities. Cosmoprof North America is *the* premier trade show in the United States beauty industry. Last year, Cosmoprof was attended by more than 25,000 visitors from 105 countries. (Exhibit 3 to ECF/Docket Entry #2, 7/9/12) Given the size of this show, and the increasing popularity of trade shows as a place for Defendants to sell Counterfeit Merchandise, multiple Defendants were present and aggressively promoting and selling Counterfeit Merchandise at Cosmoprof North America 2012.

Defendants' Counterfeit Merchandise is presented in bottles nearly identical in every material aspect to genuine GELISH goods. (Haile Affidavit ¶ 23, Exhibit 1 to ECF/Docket Entry # 2, 7/9/12) Figure 3 below, illustrates an example of Counterfeit Merchandise manufactured in China and unlawfully imported into the United States and this judicial district.



**FIGURE 3: EXAMPLES OF COUNTERFEIT MERCHANDISE**

Page 5 of 11

424509.6

Likewise, Defendants' are promoting, offering for sale, and selling LED lights incorporating numerous identical elements to those distinctive source indicated elements used in connection with the GELISH goods, including, but not limited to, similar trade dress.  These include, among other things, the distinctive white and grey scrollwork patterns and use of the nearly identical terms 18K and X6.  In all, given the similarity between the Counterfeit Merchandise and genuine GELISH goods, it is an undeniable reality that consumers presented with the Counterfeit Merchandise will be confused regarding its source.

The Counterfeit Merchandise is of inferior quality.  (Haile Affidavit ¶ 24, Exhibit 1 to ECF/Docket Entry # 2, 7/9/12)  The Counterfeit Merchandise is commonly manufactured by large-scale, professional manufacturing shops located in counterfeiting safe havens, such as the People's Republic of China.  (Exhibit 4 to ECF/Docket Entry #2, 7/9/12)   Such facilities are well-known for using the cheapest quality, and sometimes hazardous, ingredients of questionable origin.  Defendants generally sell Counterfeit Merchandise bottles at a per-unit price range between approximately $2 and $20, depending on the volume of units purchased.

## II.   CONCLUSIONS OF LAW

The Amended Complaint, Complaint, Declarations, accompanying Exhibits, and evidence and information submitted in support of this Application, as well as information presented at the hearing  related to seizure efforts conducted during Cosmoprof 2012 in Las Vegas and the materials seized with the assistance of the United States Marshals Service, amply support the following conclusions of law:

A. Plaintiffs have a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of nail care preparations and LED lamps bearing counterfeits, reproductions, and/or colorable imitations of the GELISH marks, in that they have shown they are the owners of valid trademarks and that

424509.6

products Defendants are selling and offering for sale are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks on nail care preparations and goods including LED lamps;

  B. Because of the infringement of the GELISH marks, Plaintiffs are likely to suffer immediate and irreparable injury if a Preliminary Injunction is not granted.  It clearly appears from the following specific facts, as set forth in Plaintiffs' Complaint, Amended Complaint, Motion, accompanying declarations, and information gathered at the hearing resulting from seizure activities at the Cosmoprof 2012 trade show in Las Vegas, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers during the course of this case unless Plaintiffs' request for preliminary injunctive relief is granted:

   1. Defendants appear to be operating wholesale distribution businesses which are manufacturing, offering for sale and selling nail polishes, nail care preparations and LED lamps bearing counterfeit and infringing trademarks and/or trade dress in violation of Plaintiffs' respective rights;

   2. Plaintiffs have well-founded fears that more Counterfeit Merchandise will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products, resulting in consequent injury to Plaintiffs' reputation and goodwill; and that Plaintiffs may suffer loss of sales for their genuine products;

   3. Plaintiffs have well-founded fears that if they proceed without entry of the preliminary injunction sought herein, Defendants will secret, conceal, destroy, sell off, or otherwise dispose of their counterfeit and infringing goods, the computers and electronic information concerning the infringing goods, and the business records relating thereto and/or inform their suppliers and others of Plaintiffs' claims with the result that those suppliers and others may also secret, conceal, sell off, or otherwise dispose of counterfeit or infringing goods and records relating thereto in their possession and control;

424509.6

C.     The balance of potential harm to the Defendants in restraining their trading in counterfeit goods if a temporary restraining order, seizure order, order and substitute custodian order are issued is far outweighed by the potential harm to Plaintiffs, their reputation and goodwill as a manufacturer of high quality products if such relief is not issued;

D.     The public interest favors issuance of a preliminary injunction in order to protect Plaintiffs' trademark interests and the public from being defrauded by the palming off of counterfeit goods as the Plaintiffs' genuine goods;

E.     Relief other than a preliminary injunction is not adequate to achieve the purposes of 15 U.S.C. § 1114;

F.     As neither of the two (2) Defendants whose property was seized at the Cosmoprof 2012 trade show in Las Vegas have appeared before this Court to contest the seizure of those materials, all such materials may be destroyed, disposed of, or maintained at the sole discretion of Plaintiffs, without prejudice to Defendants, as all such materials are amply and adequately described in the Return filed by the United States Marshals Service.  (ECF/Docket Entry# 17, 8/2/12); and

G.     No good cause exists for any previously filed documents to remain sealed.

Upon review of Plaintiffs' Complaint, Motion, and supporting evidentiary submissions, it is hereby

ORDERED the Plaintiffs' motion for a Preliminary Injunction is GRANTED, according to the terms set forth below:

**PRELIMINARY INJUNCTION**

(1)    Defendants, their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants are hereby preliminarily enjoined:

(a) From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the GELISH marks

424509.6

   identified in Section I or the trade dress associated with the GELISH goods, above, or any confusingly similar mark, other than those actually manufactured or distributed by Plaintiffs;

 (b) From communicating, directly or indirectly, with any person or persons (i) from whom Defendants purchased or obtained products bearing any of the GELISH marks identified in Section I above; (ii) to whom Defendants sold or offered to sell these products; or (iii) whom Defendants knows or reasonably believes to possess, control, or have access to any these products;

 (c) From otherwise communicating, directly or indirectly, with any person(s) about this action, or Plaintiffs' Application for Preliminary Injunction, except for Defendants' attorney or attorneys;

 (d) From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing any of the GELISH marks, or any confusingly similar marks, or trade dress; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing any of the GELISH Marks, or any confusingly similar marks;

 (e) Knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (a) through (d) above; and

 (f) From disposing of any records, electronically stored information, or computerized information or data containing information related to the manufacture, sale, import, export, raw materials, distribution, payments, profits, or other information related to placing the products at issue into the stream of commerce, paying for or purchasing the raw materials to create the products, or receiving any payment for the sale or distribution of the products.

(2)   Plaintiffs shall maintain their bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00), as payment of damages to which the Defendants may be entitled for wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

(3)   This Preliminary Injunction shall remain in effect during the pendency of this action or until such further date as set by the Court or stipulated to by the parties.

## SUBSTITUTE CUSTODIAN ORDER AND ORDER ALLOWING DESTRUCTION OF PREVIOUSLY SEIZED PRODUCTS AND MATERIALS

(4)   Plaintiffs' counsel, Feldman Gale, P.A. and Wilson, Elser, Moskowitz, Edelman &

424509.6

Dicker, LLP will continue to act as substitute custodians of any and all property seized pursuant to this Court's Seizure Order (Order Granting Plaintiffs' Emergency Ex Parte Motion, ECF/Docket Entry # 9, filed 7/19/12) and shall hold harmless the United States Marshals Service or other Federal, State, or local law enforcement officers executing this Seizure Order and their employees from any and all claims asserted in any court or tribunal arising from any acts, incidents, or occurrences in connection with the seizure and possession of any of the Defendants' property, including any third-party claims. Any and all products seized at the Cosmoprof 2012 trade show in Las Vegas pursuant to such Seizure Order may be destroyed, disposed of, or maintained in any portion at the sole discretion of Plaintiffs, and testing may be conducted of any desired portion at the sole discretion of Plaintiffs, as detailed in paragraph 5, below, as neither of the two (2) Defendants has appeared before this Court to contest the seizure.

(5) At their sole discretion, Plaintiffs will be allowed to undertake chemical testing of a representative sample, or any portion desired, of the property seized at the Cosmoprof 2012 trade show in Las Vegas, pursuant to this order to determine whether it contains any unlawful or hazardous materials.

(6) For any future seizures based upon this Order, the Amended Complaint, or the prior Application of Plaintiffs, Defendants' counsel shall have supervised access to any seized goods and/or business records, which shall be stored and maintained until such time as a hearing can be held, and Plaintiffs' counsel shall act as substitute custodians of any such future seized items.

**COMPLIANCE REPORT**

(7) Defendants shall file with the Court and serve on counsel for Plaintiffs within five (5) days after the service of this Order, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with this Order. Specifically, the report shall include a Certification that:

424509.6

(a) The Defendants have identified and surrendered to law enforcement officials and the Substitute Custodian all documents and property subject to seizure pursuant to Paragraphs II.(3)(a) through (c) above;

(b) The Defendants have not discussed the Plaintiffs' Application, this Seizure Order or any aspects of the above-captioned case with any persons or entities other then those identified in Paragraphs II. (1)(b) and (c) above;

(c) Defendants have not knowingly instructed, aided or abetted any other person or business entity engaging in any of the activities referred to in sub paragraphs II. (1)(a) through (d) above.

(8) All pleadings and Orders previously filed in this matter under seal, including the Seizure Order (Order Granting Plaintiffs' Emergency Ex Parte Motion, ECF/Docket Entry # 9, filed 7/19/12), shall be un-sealed.

(9) This Order may be used by the United States Marshals Service, the United States Customs and Immigration Service, or any other branch of the United States government or of the government of any state, district, or territory of the United States, to identify and further discourage the counterfeiting, reproduction, causing confusion in the marketplace, and/or the sale or importation of colorable imitations.

DONE AND ORDERED in Las Vegas, Nevada, this __10th__ day of October, 2012.

_____
UNITED STATES DISTRICT JUDGE