Sheri M. Thome (Nevada Bar No. 8627)
J. Scott Burris (Nevada Bar No. 10529)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
Tel: (702) 727-1400/Fax: (702) 727-1401
Sheri.thome@wilsonelser.com
J.Scott.Burris@wilsonelser.com

Alejandro J. Fernandez (Pro Hac Vice)
FELDMAN GALE, P.A.
400 N. Tampa Street, Suite 2830
Tampa, FL 33602
Tel: (305)358-5001
afernandez@feldmangale.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HAND & NAIL HARMONY, INC. and NAIL ALLIANCE, LLC, <br><br>Plaintiffs, <br><br>v. <br><br>GUANGZHOU SHUN YAN COSMETICS CO., LTD., DBA SHUN YAN COSMETICS, CO., LTD., CHUJIE PLASTIC CO, LTD. DBA YIWU HAIKANG COSMETIC BUSINESS, and <br><br>DOES 1-1000, inclusive <br><br>Defendants. | CASE NO.: 2:12-cv-01212-JCM-PAL <br><br>**MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiffs Hand & Nail Harmony, Inc. and Nail Alliance, LLC (collectively, "Plaintiffs"), hereby move this Court to enter a final default judgment and permanent injunction against Defendant Guangzhou Shun Yan Cosmetics Co., Ltd., d/b/a Shun Yan Cosmetics, Co., Ltd. ("Shun Yan" or "Defendant").[1] In support thereof, Plaintiffs submit the following Memorandum of Law.

---

[1] Defendants Chujie Plastic Co, LTD., d/b/a Yiwu Haikang Cosmetic Business, and DOES 3-1000 have been voluntarily dismissed from this action without prejudice [D.E. # 35].

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **INTRODUCTION**

Plaintiffs initiated this action against Doe Defendants 1-1000 through the filing of their Complaint in this matter for trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114, 116(d) (Count One); false designation of origin, false descriptions, unfair competition and dilution under 15 U.S.C. § 1125 (Count Two); unfair competition by infringement of common law rights (Count Three); patent infringement (Count Four); and interference with contractual rights (Count Five). [D.E. # 1.] Along with their Complaint, Plaintiffs filed their Emergency Ex Parte Motion for Temporary Restraining Order and other relief ("Plaintiffs Ex Parte Motion.") requesting, *inter alia*, that pursuant to 15 U.S.C. § 1116(d)(9), the Court authorize the seizure of counterfeit products bearing any of Plaintiffs' trademarks at the Cosmoprof of North America 2012 Trade Show ("Cosmoprof 2012") held in Los Vegas, Nevada that year [D.E. # 2]. The Court granted Plaintiffs' Ex Parte Motion authorizing the seizure of counterfeit merchandise at Cosmoprof 2012. [D.E.# 3].

At the tradeshow, pursuant to this Court's Order, Plaintiffs, with the assistance of the U.S Marshalls seized counterfeit merchandise, including counterfeit merchandise that was being offered for sale by Defendant Shun Yan. *See* [D.E. # 17.] Subsequently, the Court granted Plaintiffs Motion for Preliminary Injunction. [D.E. # 18, 21.]

Plaintiffs amended their complaint to name Defendant Shun Yan and Defendant Chujie Plastic Co, LTD., d/b/a Yiwu Haikang Cosmetic Business ("Chujie Plastic"), both Chinese entities, in place of Does 1 and 2 respectively. [D.E. # 19]. Plaintiffs then initiated service of process pursuant to the Hague Convention on the two named Chinese defendants. Plaintiffs successfully served Defendant Shun Yan with the Summons and a copy of the Amended Complaint at its company address in China pursuant to Article 5 of

the Hague Convention.[2]  [D.E. # 32.]  When Defendant Shun Yan failed to answer or otherwise respond to the First Amended Complaint, or serve a copy of any Answer or other response upon Plaintiffs' attorneys of record within the time proscribed by the Federal Rules, Plaintiffs moved for entry of a Clerk's default. [D.E. # 33.]  Subsequently, the Clerk entered the default pursuant to Rule 55(a). [D.E. # 34.]  Plaintiffs now ask this Court to enter default judgment against defendant under Federal Rule of Civil Procedure 55(b)(2).

As set forth more fully in the Plaintiffs' Ex Parte Motion, the accompanying Memorandum of Points and Authorities and Declarations and Exhibits filed therewith, Defendant Shun Yan was promoting, selling, offering for sale and distributing goods bearing counterfeits of Plaintiffs' trademarks within this judicial district at tradeshows including at Cosmoprof 2012.  Defendant's activities constitute willful and intentional infringement and counterfeiting of Plaintiffs' trademarks in total disregard of Plaintiffs' rights, and have taken place in spite of Defendant's knowledge that its use of Plaintiffs' trademarks was in direct contravention of Plaintiffs' rights.  Defendant's unlawful activities have caused and will continue to cause irreparable injury to Plaintiff.

Defendant Shun Yan is in default, and the prerequisites for a default judgment have been met.  As relief, Plaintiffs seeks entry of final default judgment finding Defendant Shun Yan liable on all counts of Plaintiffs' First Amended Complaint.  Plaintiffs pray such judgment includes the entry of a permanent injunction, an award of $200,000 in statutory damages for trademark counterfeiting, and release of the $5000 bond posted by Plaintiffs in support of the Preliminary Injunction.

---

[2] Plaintiffs were unable to successfully serve Chujie Plastic despite having initiated the process pursuant to the Hague convention.

3

## II. ARGUMENT

### A. Legal Standard for Default Judgment

Default judgment is appropriate "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a); *Teller v. Dogge*, No. 2:12-CV-591 JCM GWF, 2014 WL 4929413, at *1 (D. Nev. Sept. 30, 2014). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule." Fed. R. Civ. P. 55(b)(2); *Teller*, 2014 WL 4929413, at *1. Thus, obtaining a default judgment entails two steps: (1) the party seeking a default judgment must file a motion for entry of default with the clerk of a district court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and, (2) once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party. *Teller*, 2014 WL 4929413, at *1.

The choice whether to enter a default judgment lies within the discretion of the trial court. *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir.1980). In the determination of whether to grant a default judgment, the trial court should consider the seven factors articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. *Id.* In applying these *Eitel* factors, "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.1977); *see* Fed.R.Civ.P. 8(d).

### B. Plaintiffs Have Properly Complied with Rule 55.

Plaintiffs properly served Defendant Shun Yan, a Chinese entity, with the Summons and a copy of the Amended Complaint at its company address in China pursuant to Article

5 of the Hague Convention. [D.E. # 32.] When Defendant Shun Yan failed to answer or otherwise respond to the First Amended Complaint, or serve a copy of any Answer or other response upon Plaintiffs' attorneys of record within the time proscribed by the Federal Rules, Plaintiffs moved for entry of a Clerk's default. [D.E. # 33.] Subsequently, the Clerk entered the default pursuant to Rule 55(a). [D.E. # 34.] Plaintiffs now asks this Court to enter default judgment against defendant under Federal Rule of Civil Procedure 55(b)(2).

    **C.**    **The *Eitel* Factors Favor Entry of a Default Judgment**.

        **1.**    **Plaintiffs Will Suffer Prejudice in the Absence of a Default Judgment.**

The first *Eitel* factor weighs in favor of granting Plaintiffs' motion for default judgment. Here, Defendant Shun Yan has failed to appear and defend against this action. In the absence of a default judgment, Plaintiffs will be severely prejudiced because they will not be allowed to litigate their claims and will be effectively denied all relief. *See, e.g.*, *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."); *Adobe Sys. Inc. v. Marmeletos*, 2009 WL 1034143 at *3 (N.D. Cal. Apr.16, 2009) ("If default judgment is not granted, plaintiff will be denied the right to adjudicate its claims and defendant's conduct will remain unimpeded."). Thus, this factor weighs in favor of judgment by default.

        **2.**    **The Amended Complaint States a Prima Facie Claim for Trademark Counterfeiting.**

The second and third *Eitel* factors favor default judgment where the complaint sufficiently states a plausible claim for relief. *See* Fed. R. Civ. P. 8; *Teller*, 2014 WL 4929413, at *2 (concluding that second and third *Eitel* factors favored entry of default judgment where complaint stated plausible claims for relief for willful violation of the Lanham and Copyright Acts). Here, in entering both a Temporary Restraining Order [D.E. # 9] and a Preliminary Injunction [D.E. # 21], this Court has previously analyzed the

substantive allegations in the operative pleading on at least two occasions and determined that not only have Plaintiffs sufficiently stated a plausible claim for relief, but also that Plaintiffs were likely to prevail on the merits. Accordingly, the second and third *Eitel* factors (the merits of Plaintiffs substantive claim and the sufficiency of the complaint) both favor entry of default judgment.

### 3. The Amount of Money at Stake is Commensurate with the Seriousness of Defendant Shun Yan's Deliberate Misconduct.

Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of a defendant's conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Trs. of Plumbers & Pipefitters Union Local 525 Health & Welfare Trust & Plan v. T.E.N. Mech. Corp.*, No. 2:10–cv–02258–RLH–NJK, 2013 WL 1249600, at *3 (D. Nev. March 27, 2013) (quoting *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)).

Plaintiffs are seeking $200,000 in statutory damages for Defendant Shun Yan's willful counterfeiting of Plaintiffs' Marks. The Lanham Act provides that plaintiffs in counterfeiting cases may elect an award of statutory damages at any time before final judgment is rendered in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or if the violation was willful, up to $2,000,000 of statutory damages. 15 U.S.C. § 1117(c). "The statutory damages provision was added in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . ., making proving actual damages in these cases extremely difficult if not impossible.'" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)(quoting S. Rep. No. 104–177, at 10 (1995)).

Accordingly, the relief sought is appropriate under 15 U.S.C. § 1117(c) is appropriate and the amount is commensurate with the seriousness of Defendant Shun Yan's deliberate misconduct. Because Plaintiffs demonstrate a basis for his requested

monetary relief, this factor weighs in favor of granting default judgment. *See Teller*, 2014 WL 4929413, at *2.

### 4. There is No Factual Dispute Precluding Entry of a Default Judgment.

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Geddes*, 559 F.2d at 560. Given the sufficiency of the Amended Complaint, including evidence of Plaintiffs' trademark registrations, Defendant's willful infringement as evidenced by the seizure of merchandise at Cosmoprof 2012, and Defendant's default, "no genuine dispute of material facts would preclude granting [Plaintiffs'] motion." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Accordingly, this factor weighs in favor of judgment by default.

### 5. Defendant's Failure to Defend Was a Calculated, Culpable Decision, Not the Result of Excusable Neglect.

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. A defendant's conduct is culpable, rather than excusable, if the defendant received actual or constructive notice of the filing of the action and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). Here, Defendant Shun Yan had actual notice of this litigation. On April 10, 2013, Defendant was served the respective Summons and a copy of the Amended Complaint at its company address in Guangzhou City, Guangdong Province, China in accordance with the provisions of subparagraph (a) of the first paragraph of article 5 of the Hague Convention. [D.E. # 32.] Despite Plaintiffs' having incurred the time and expense of formally serving Defendant Shun Yan through the Hague Convention, Defendant Shun Yan did not file an answer or other response to the Amended Complaint. Accordingly, Defendant's behavior cannot possibly be characterized as "excusable neglect." *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Defendant Shun Yan's default was a calculated, culpable decision, and weighs in favor of a default judgment.

6. **Defendant's Failure to Defend Makes a Decision on the Merits Impracticable, If Not Impossible.**

The seventh *Eitel* factor considers the public policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. While this public policy generally favors a decision on the merits, a default judgment is appropriate where a defendant deliberately neglects to wage a defense, as is the case here. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs Complaint makes a decision on the merits impractical, if not impossible."). Considering that Defendant Shun Yan has, with full knowledge of these proceedings, abandoned any defense to Plaintiffs' claims, a default judgment is entirely appropriate despite the public policy favoring the resolution of disputes on the merits.

In summary, this Court should conclude after reviewing Plaintiffs' motion, the evidence previously submitted in this case, and after considering the *Eitel* factors as a whole, that the entry of default judgment is appropriate against Defendant Shun Yan. See *Teller*, 2014 WL 4929413, at *2-3.

**D.    A Permanent Injunction is Necessary to Protect Plaintiffs**.

The Lanham Act "vests the district court with the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116). Plaintiffs seek a permanent injunction prohibiting Defendant Shun Yan from manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the GELISH marks or the trade dress associated with the GELISH goods, or any confusingly similar mark.

A party seeking a permanent injunction must establish the following: (1) actual success on the merits; (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted; (3) that the balance of equities tips in its favor; and (4) that a

permanent injunction is in the public interest. *See Winter v. Natural Res. Def Council*, 555 U.S. 7, 20, 32 (2008) (citation omitted).

Here, a permanent injunction is warranted because Plaintiffs have established "actual success on the merits" through Defendant Shun Yan's default. Further, Plaintiffs are likely to suffer irreparable injury because, absent injunctive relief, Defendant's trademark counterfeiting and infringement are likely to resume. Defendant's resumption of its counterfeiting activities would have irreversibly harmful effects on the goodwill associated with the GELISH marks and the GELISH goods. This is especially so when consumers mistakenly believe that Defendant's Counterfeit Merchandise of inferior and even unusable or harmful quality originated from Harmony. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted) ("[I]ntangible injuries, such as damage to goodwill, qualify as irreparable harm."); *MySpace, Inc. v. Wallace*, 498 F Su 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable."). Moreover, Defendant's resumption of its counterfeiting activities would irreparably harm Harmony's relationships with its distributors and purchasers, who end up competing with unauthorized purchasers that acquire product from unauthorized distributors of Counterfeit Merchandise. Accordingly, Plaintiffs are extremely likely to suffer irreparable injury absent permanent injunctive relief.

Likewise, the balance of harms and the public interest both weigh in Plaintiffs' favor. Plaintiffs have expended substantial sums of money using and promoting their marks, and any harm to Defendant Shun Yan in forcing them to comply with the requirements of the law merits little equitable consideration. Similarly, the public interest lies in favor of upholding property interests in trademarks and preventing customer confusion. Because Plaintiffs have demonstrated a likelihood of irreparable harm and because the balance of harms and the public interest weigh in Plaintiffs' favor, this Court should permanently enjoin Defendant Shun Yan from engaging in any further counterfeiting.

**E.     The Court Should Award Plaintiffs Statutory Damages.**

The Lanham Act provides that plaintiffs in counterfeiting cases may elect an award of statutory damages at any time before final judgment is rendered in the amount of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 117(c). "[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (citations omitted). An award of statutory damages should "not merely compel[] restitution of profit and reparation for injury but also discourage wrongful conduct." *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).

The amount of statutory damages Plaintiffs are seeking—$200,000—is appropriate under the Lanham Act and under precedent of courts in the Ninth Circuit. Plaintiffs are legally entitled to request at least up to $1,000,000 in statutory damages[3] in this matter because of Defendant's willful misconduct. In this case, by Defendant's default, Defendant has admitted that its "activities constitute **counterfeiting** and **intentional, willful infringement**, in violation of Plaintiffs' rights under 15 U.S.C. §1114." *See* Am. Compl. ¶ 61 (emphasis added).

Furthermore, "[w]illfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with 'an aura of indifference to plaintiff's rights'—in other words, that the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it." *Philip*

---

[3] In their Amended Complaint, Plaintiffs have only requested that they "be awarded statutory damages from each Defendant[] in the amount of one million dollars ($1,000,000.00) per each counterfeit GELISH mark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act." Am. Compl. ¶ 82.D.

*Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007) (internal citations omitted). Plaintiffs' GELISH mark is protected by multiple federal trademark registrations, Am. Compl. ¶ 14, and Plaintiffs have given notice to Defendant Shun Yan pursuant to 15 U.S.C. §1111 by marking GELISH goods with the ® symbol to notify others that the GELISH mark is the subject of federal trademark registrations, Am. Compl. ¶ 32. Furthermore, by Defendant's default, Defendant has admitted that GELISH marks, qualify as "famous" as that term is used in 15 U.S.C. § 1125 (c)(1). Accordingly, Defendant's willfulness can also be inferred by the fact that Defendant was clearly on notice that that it was infringing Plaintiffs' marks and yet continued to do so.

Although Plaintiffs believe that a $1,000,000 award of statutory damages in this case would be justified, Plaintiffs recognize that courts in the Ninth Circuit have been more inclined to grant default judgments in mark infringement cases in amounts more closely approximating the top end of the available damages range for non-willful infringement. For example, in *Nop*, the Eastern District of California, surveying statutory damages for mark infringement under 15 U.S.C. §1117(c)(1)'s prior allowable damages range of up to $100,000 for non-willful infringement, found that an award of the maximum damages for non-willful infringement—in a case in which the plaintiff likely would have been able to prove willful infringement had the defendant not defaulted—was reasonable in light of damages awarded in similar cases in the same and other courts. 549 F. Supp. 2d at 1238-9.

As such, Plaintiffs respectfully requests that this Court award Plaintiffs $200,000, representing the maximum damages awardable under current law for non-willful infringement. This amount is reasonable both to repair the harm to Plaintiff, and also to discourage future infringement by Defendant Shun Yan and similarly situated Chinese counterfeiters.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs requests that this Court enter default judgment against Defendant Shun Yan in the amount of $200,000, enter a permanent

injunction enjoining any further infringement and wrongful conduct by Defendant Shun Yan, order that the bond posted by Plaintiffs in the amount of $5,000 be released by the Clerk, and grant any other relief this Court deems just and proper. Plaintiffs have submitted a proposed order contemporaneously with this motion.

Dated: June 9, 2015

Respectfully submitted,

/s/ J. Scott Burris
Sheri M. Thome (Nevada Bar No. 8627)
J. Scott Burris (Nevada Bar No. 10529)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
Tel: (702) 727-1400/ Fax: (702) 727-1401
Sheri.thome@wilsonelser.com
J.Scott.Burris@wilsonelser.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or other persons authorized to receive Notice of Electronic Filing generated by CM/ECF.

      /s/ Naomi E. Sudranski
      An Employee of
      WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Sheri M. Thome (Nevada Bar No. 8627)
J. Scott Burris (Nevada Bar No. 10529)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
Tel: (702) 727-1400/Fax: (702) 727-1401
Sheri.thome@wilsonelser.com
J.Scott.Burris@wilsonelser.com

Alejandro J. Fernandez (Pro Hac Vice)
FELDMAN GALE, P.A.
400 N. Tampa Street, Suite 2830
Tampa, FL 33602
Tel: (305)358-5001
afernandez@feldmangale.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HAND & NAIL HARMONY, INC. and NAIL ALLIANCE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GUANGZHOU SHUN YAN COSMETICS CO., LTD., DBA SHUN YAN COSMETICS, CO., LTD., CHUJIE PLASTIC CO, LTD. DBA YIWU HAIKANG COSMETIC BUSINESS, and <br><br> DOES 1-1000, inclusive <br><br> Defendants. | CASE NO.: 2:12-cv-01212-JCM-PAL <br><br> **FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |

THIS MATTER having come before the Court upon motion by Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively, "Plaintiffs"), for entry of a final default judgment of its claims against Defendant Guangzhou Shun Yan Cosmetics Co., Ltd., d/b/a Shun Yan Cosmetics, Co., Ltd. ("Shun Yan") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and entry of a permanent injunction; following the entry of Clerk's Default by the Clerk on November

807065v.1

27, 2013 (D.E. # 34); and the Court having considered the moving papers and there being no opposition thereto, and upon;

IT IS HEREBY ORDERED that Plaintiffs' Motion for Entry of Final Default Judgment and Permanent Injunction is GRANTED, and judgment is hereby entered in favor of Plaintiff, Hand & Nail Harmony, Inc., and Plaintiff Nail Alliance, LLC, and against Defendant Guangzhou Shun Yan Cosmetics Co., Ltd., d/b/a Shun Yan Cosmetics, Co., Ltd. on all Counts of the First Amended Complaint; and it is hereby further ordered and adjudged that said Judgment shall include the following specific findings of fact and awarding of specific relief.

**THE COURT HEREBY FINDS THAT:**

1. Harmony promotes, distributes and sells an enormously successful line of soak-off gel polishes and other nail care applications in a wide variety of colors under the brand name GELISH. Additionally, Harmony manufactures, distributes and sells high-quality UV lamps under its marks GELISH LED 6G, GELISH LED 9G, and GELISH LED 18G, all of which are used to rapidly cure its GELISH brand polishes and nail care applications, and which bear similar trade dress to the GELISH brand gel polishes and nail care applications. Collectively, Harmony's GELISH brand gel polishes, nail care applications, and UV lamps are referred to herein as the "GELISH goods." GELISH goods are made in America and are of exceedingly high quality, durability, consistency and beauty.

2. Harmony invests millions of dollars in promoting its GELISH goods in the United States and throughout the world. For example, Harmony invests millions of dollars promoting GELISH goods at trade shows around the world, as well as in an expansive number of print and online trade publications. Online, Harmony developed a highly visited website (www.nailharmony.com) and corporate pages on social media sites, such as Facebook. Harmony has even produced popular online advertisements, including one video that has been viewed by more than 2.5 million visitors.

807065v.1

3. Nail Alliance is a holding company that owns the rights to United States Trademark Registration Numbers 4,096,115 (GELISH standard character mark) and 3,857,946 (GELISH design plus words), together with all other common law trademark and trade dress rights associated with the GELISH goods (collectively, "GELISH marks"). Harmony is the exclusive, worldwide licensee of Nail Alliance as relates to the GELISH goods and the GELISH marks.

4. The GELISH standard character mark and GELISH design plus words marks are valid and registered in class 3 for use in connection with nail care preparations. Each of the GELISH goods incorporates the ® symbol to notify others that the mark GELISH is the subject of federal trademark registrations.

5. The GELISH marks are symbols of Harmony's quality, reputation and goodwill and have never been abandoned. Moreover, the GELISH marks are instantly recognizable and associated exclusively with Harmony throughout the world by consumers. Accordingly, the GELISH marks are famous marks as the term is defined in the Lanham Act, 15 U.S.C. § 1125 (c).

6. The commercial success of Harmony's GELISH goods has attracted numerous counterfeiters that are bent on syphoning Harmony's profits at the expense of Harmony and unwary consumers. Defendant Shun Yan flagrantly promoted and sold deeply-discounted, spurious, counterfeit or colorable imitations of GELISH goods ("Counterfeit Merchandise") to boutiques and end users in attendance at trade shows, including Cosmoprof trade shows in Las Vegas.

7. Cosmoprof North America, was held in Las Vegas, Nevada between July 22 and July 24, 2012. Defendant Shun Yan was present and aggressively promoting and selling Counterfeit Merchandise at Cosmoprof North America 2012.

8. Defendant's Counterfeit Merchandise is presented in bottles nearly identical in every material aspect to genuine GELISH goods. Given the similarity between the Counterfeit Merchandise and genuine GELISH goods, it is an undeniable reality that

807065v.1

consumers presented with the Counterfeit Merchandise will be confused regarding its source.

9. The Counterfeit Merchandise is of inferior quality. The Counterfeit Merchandise is commonly manufactured by large scale, professional manufacturing shops located in counterfeiting safe havens, such as the People's Republic of China. Such facilities are well-known for using the cheapest quality, and sometimes hazardous, ingredients of questionable origin. Defendant generally sells Counterfeit Merchandise bottles at a per-unit price range between approximately $2 and $20, depending on the volume of units purchased.

**THEREFORE, IT IS HEREBY ORDERED THAT** Plaintiff, Hand & Nail Harmony, Inc., and Plaintiff Nail Alliance, LLC, be awarded judgment against Defendant Guangzhou Shun Yan Cosmetics Co., Ltd., d/b/a Shun Yan Cosmetics, Co., Ltd. on all counts of the First Amended Complaint.

**IT IS FURTHER ORDERED THAT** Plaintiffs be awarded statutory damages against Defendant, Guangzhou Shun Yan Cosmetics Co., Ltd., d/b/a Shun Yan Cosmetics, Co., Ltd., in a total amount of $200,000.00, with post-judgment interest on the principal sum at the judgment rate from the date of entry of the Judgment until paid in full.

**IT IS FURTHER ORDERED THAT** Defendant, Guangzhou Shun Yan Cosmetics Co., Ltd., d/b/a Shun Yan Cosmetics, Co., Ltd., its agents, servants, employees attorneys, successors and assigns and all persons, firms and corporations acting in concert with it, and each of them, are hereby enjoined from: (1) using the GELISH Marks, any confusing similar mark, or the trade dress associated with the GELISH goods in connection with the manufacturing, importing, advertising, promoting, distributing, transferring, offering for sale or selling of any goods, including, but not limited to soak-off gel polishes, other nail care applications, lamps for curing nail care applications, and other merchandise; and (2) aiding, abetting, inducing, or encouraging another to perform any of the acts enjoined herein.

807065v.1

AND IT IS FURTHER ORDERED that the Clerk of the Court shall release the bond posted by Plaintiffs in the amount of $5,000.00 as security for the temporary restraining order and preliminary injunction entered in this case.

DONE AND ORDERED in Las Vegas, Nevada, July 15, 2015.

*[signature]*
UNITED STATES DISTRICT JUDGE

5

807065v.1